IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WINWEAR LIMITED<br><br>Plaintiff,<br><br>v.<br><br>NORTH SOUTH US INC. dba North South Trading dba North South LLC, MOHAMMED N. ISLAM, CITI FREIGHT LOGISTICS INC. and DOES 1 THROUGH 10, INCLUSIVE<br><br>Defendants. | CASE NO. 22-cv-5418<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Winwear Limited ("Plaintiff" or "Winwear"), by and through undersigned counsel, files this complaint against Defendants North South US Inc. dba North South Trading, North South LLC ("North South"), Mohammed N. Islam ("Mr. Islam"), Citi Freight Logistics Inc. ("Citi Freight," and together with North South and Mr. Islam, "Defendants"), as well as Does 1 through 10, inclusive, alleging as follows:

1. This is a complaint for breach of contract, or alternatively breach of implied contract, against North South arising from that party's formation of a number of agreements for the sale and purchase of consumer goods with Plaintiff.

2. After placing purchase orders for custom-made apparel, and after Plaintiff having fully performed on those orders by producing and delivering the goods (the "Goods"), North South failed to pay.

3. North South and its principal Mr. Islam further conspired to fraudulently take possession of Plaintiff's Goods from Defendant Citi Freight, an international freight carrier, using forged shipping documents.

1

4. The complaint is also for breach of maritime contract, negligent violation of shipping laws, and conversion[1] against Citi Freight, whereby Citi Freight was the carrier for the Goods that Plaintiff sold to North South, and Citi Freight improperly released the Goods to North South without having received the original bill of lading, enabling Mr. Islam and North South's fraud.

## I. THE PARTIES

5. Plaintiff Winwear is a duly formed Bangladeshi limited company with a principal place of business in the city of Gazipur, Bangladesh.

6. Upon information and belief, Defendant North South is a corporation formed under the laws of the State of New York with its principal place of business at 84-75, 168th Place, Jamaica, New York 11432, which sometimes conducts business under the names North South Trading or North South LLC.

7. Upon information and belief, Defendant Mohammed N. Islam is an individual residing in this district in the Borough of Queens at 84-75, 168th Place, Jamaica, New York 11432.

8. Upon information and belief, Defendant Citi Freight is a corporation formed under the laws of the State of New Jersey with its principal place of business at 55 Carter Drive, Suite 201, Edison, New Jersey 08817.

## II. JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction under 18 U.S.C. § 1332(a)(2) in that this is a civil action between a citizen or subject of a foreign state, on the one hand, and citizens of different states, on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff is a corporation duly organized under the laws of a

---

[1] Conversion is also alleged against Defendants Mr. Islam and North South.

foreign country.  The corporate Defendants are formed and headquartered in the states of New York (North South) and New Jersey (Citi Freight).  Mr. Islam is an individual residing in the State of New York and, on information and belief, a citizen of New York   Pursuant to 28 U.S.C. § 1332(a)(2), there exists complete diversity of citizenship of the parties. There are no other parties to the case whose citizenship is at issue under 28 U.S.C. § 1332.

      10. This Court also has subject matter jurisdiction pursuant to 18 U.S.C. § 1331 in that this is a civil action arising under the laws of the United States, specifically The Harter Act of 1893, 46 U.S.C. §§ 190–196, (the "Harter Act") and the Carriage of Goods by Sea Act of 1936 ("COGSA", together with the Harter Act, the "Shipping Acts"), 46 U.S.C. §§ 1300–1315, which govern the responsibilities of carriers like Defendant Citi Freight that are involved in the shipment of goods into the United States from ports outside of the United States.

      11. This Court has personal jurisdiction over North South because its state of formation and headquarters are located in the State of New York.

      12. This Court has personal jurisdiction over Mr. Islam because he resides in the State of New York.

      13. This Court has personal jurisdiction over Defendant Citi Freight because it has sufficient minimum contacts with this forum as a result of business conducted within the State of New York and this judicial district and because a substantial part of the events or omissions giving rise to this action took place in this judicial district.

      14. This Court is a proper venue pursuant to 28 U.S.C. § 1291(b)(1), because North South's principal place of business is located in this judicial district, Mr. Islam resides in this district, and pursuant to 28 U.S.C. § 1291(b)(2), because a substantial part of the events or omissions giving rise to this action took place in this judicial district.

### III. STATEMENT OF FACTS

15. Plaintiff is primarily in the business of manufacturing and selling apparel to wholesale buyers in the United States and elsewhere in the world.

16. Defendant North South is, on information and belief, a New York importer and wholesaler of foreign-produced goods, wholly owned and controlled by Mr. Islam.

17. Starting around early 2021, Defendant Mr. Islam, through his corporate entity North South, ordered an aggregate amount of $367,046.40 in custom made clothing from the Plaintiff, comprising the Goods.

18. Accordingly, North South issued detailed purchase orders for the goods (the "Purchase Orders," copies of which are included herein as **Exhibit A**), specifying price, quantity, fabrics, packaging and other contractual terms.

19. Following the issuance of the Purchase Orders, Plaintiff manufactured and delivered the goods, issuing the respective invoices ("Invoices," copies of which are included here as **Exhibit B**).

20. Details of the Goods and the respective Invoices issued to North South are as follows:

| INVOICE NO. | QTY | INV. VALUE | BL NO. | BL DT. |
|---|---|---|---|---|
| WIN/ASIATEX/F-64/2021/037 | 28944 SET | $105,645.60 | CITIMEDUKA866905 | 07.06.2021 |
| WIN/ASIATEX/F-64/2021/032 | 31,464 SET | $114,843.60 | CITIMEDUKA849828 | 04.06.2021 |
| WIN/ASIATEX/F-64/2021/049 | 14,904 SET | $79,567.92 | CITIMEDUKA938340 | 08.08.2021 |

21. The Goods were sold to North South on a letter of credit basis, with the letters of credit issued by North South's financing company's bank Standard Commerce Bank Ltd. ("Standard Bank").

4

22. At the direction of North South and Mr. Islam, the Goods were shipped free on board ("FOB") Chattogram, Bangladesh, using Defendant Citi Freight as the shipper.

23. Upon Plaintiff's delivery of the Goods to Citi Freight, and according to standard export practice in Bangladesh and elsewhere, Citi Freight issued original bills of lading covering the transport of the goods (the "Bills of Lading," copies of which are included herein as **Exhibit C**), naming Plaintiff's bank The Premier Bank Ltd. ("Premier Bank") as consignee.

24. According to standard practice in international shipping, Citi Freight was only permitted to release the Goods in New York upon the presentation of the original bills of lading, duly endorsed by Premier Bank.

25. Following the shipment of the Goods, Plaintiff tendered the original Bills of Lading to Standard Bank through the proper banking channels for payment on the letters of credit.

26. When Standard Bank determined that Plaintiff's document presentation was non-conforming (i.e. noncompliant with the strict terms of the letter of credit), it opted to treat the transaction on a 'documents against payment' basis ("DP"), whereby the original shipping documents would only be released to North South upon full payment by North South.

27. However, the original Bills of Lading were never collected from Standard Bank by North South or any other party.

28. When Plaintiff learned that the goods had been improperly released to North South, the original Bills of Lading were subsequently returned by Standard Bank to Premier Bank, and thereafter to Plaintiff. The original Bills of Lading are now in the possession of Plaintiff or its counsel.

29. To date, North South has not paid for the Goods and Plaintiff has not received payment for the Goods.

30. On information and belief, Mr. Islam and North South presented Citi Freight with forged documents purporting to be original bills of lading covering the Goods, and thus were able to illegally take possession the Goods (copies of the forged bills of lading, as subsequently provided by Citi Freight's counsel, are included herein as **Exhibit D**).

31. Due to Defendants actions, Plaintiff has been damaged in an amount not less than $367,046.40.

## IV. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against Defendant North South)**

32. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

33. Beginning in 2021, Plaintiff and North South entered into a series of written agreements, followed by Plaintiff's acceptance and full performance of those agreements.

34. The parties intended to create, and did create, binding written contracts through these purchase orders, and each knew or should have known that its behavior would be interpreted by the other party as an agreement.

35. With respect to the Goods, the Plaintiff has performed all of its obligations under the Purchase Orders except for those that have been prevented, delayed, or excused by the acts or omissions of Defendants.

36. While Plaintiff has performed all of its obligations under the agreements, North South has failed to perform its payment obligations and currently owes Plaintiff $367,046.40.

37. Because of North South's continuous and ongoing failure to perform their obligations to pay for the Goods, Plaintiff has been damaged in an amount to be proven at trial but not less than $367,046.40.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(Against Defendant North South)**

38. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

39. Plaintiff pleads this second cause of action only in the alternative to the first cause of action.

40. Beginning in or about 2020, Plaintiff and North South entered into a series of verbal agreements, followed by Plaintiff's acceptance and full performance.

41. These parties created binding implied contracts through the verbal agreements, and each knew or should have known that its behavior would be interpreted by the other party as an agreement.

42. While Plaintiff has performed all of its obligations under the agreements, North South has failed to perform its payment obligation and currently owe Plaintiff $367,046.40.

43. Because of Defendant North South's continuous and ongoing failure to perform their obligations to pay for the Goods, Plaintiff has been damaged in an amount to be proven at trial but not less than $367,046.40.

**THIRD CAUSE OF ACTION**
**BREACH OF MARITIME CONTRACT**
**(Against Defendant Citi Freight)**

44. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

45. In mid and late-2021, Plaintiff delivered the Goods to Defendant Citi Freight for international carriage and delivery to the port in New York.

46. Citi Freight issued the respective negotiable Bills of Lading covering transport of the Goods, naming Premier Bank as consignee, and delivering the original Bills of Lading to Plaintiff.

47. According to the terms of the maritime contract, Citi Freight could only release the Goods to "notify party" North South upon the presentation of the original Bills of Lading, duly endorsed by consignee Premier Bank.

48. In breach of the maritime contract, Citi Freight proceeded to release the Goods to North South and Mr. Islam without proper presentation or receipt of the original Bills of Lading.

49. Retention of the original Bills of Lading against payment was Plaintiff's only means to guarantee performance from its counterparty North South.

50. As a consequence of Citi Freight's breach, Plaintiff was deprived of possession of the Goods and never received payment for the Goods from North South nor from Mr. Islam.

51. Due to Citi Freight's breach of the maritime contract, Plaintiff has been damaged in an amount to be proven at trial but not less than $367,046.40, which is now owed by Citi Freight to Plaintiff.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE SHIPPING ACTS**
**(Against Defendant Citi Freight)**

52. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

53. Plaintiff contracted with Citi Freight for the international carriage of goods by sea covered under the Shipping Acts (The Harter Act and COGSA).

8

54. Harter Act and COGSA govern the responsibilities of carriers involved in the shipment of goods into the United States from ports outside of the United States.

55. Under these Acts, Citi Freight owes a duty to Plaintiff to properly release the Goods only upon the presentation of the original Bills of Lading.

56. Under these Acts, Citi Freight may not disclaim liability for its duties to properly discharge the Goods.

57. Citi Freight negligently breached its duty to Plaintiff, and violated the Shipping Acts, by improperly releasing the Goods without receiving the original Bills of Lading.

58. Due to Citi Freight's negligence, Plaintiff has not been paid by North South for the Goods and has suffered damages in an amount to be proven at trial but not less than $367,046.40.

59. Due to its negligence under the Shipping Acts, Citi Freight owes Plaintiff an amount not less than $367,046.40.

**FIFTH CAUSE OF ACTION**
**CONVERSION**
**(Against Defendants North South, Mr. Islam and Citi Freight)**

60. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

61. Following the delivery of the Goods to Citi Freight in Bangladesh, and Citi Freight's issuance to Plaintiff of the original, negotiable Bills of Lading covering the Goods, Plaintiff retained legal ownership of the Goods as bailor.

62. Citi Freight had control of the Goods as bailee.

63. The moment that Citi Freight delivered the Goods to North South and Mr. Islam, each of those parties exercised unauthorized dominion over Plaintiff's Goods.

9

64. Citi Freight, North South and Mr. Islam's conversion of the Goods caused damages to Plaintiff in an amount not less than $367,046.40.

65. As a result of Citi Freight, North South and Mr. Islam's conversion, Plaintiff is further entitled to punitive damages.

## SIXTH CAUSE OF ACTION
## FRAUD
**(Against Defendants North South and Mr. Islam)**

66. Plaintiff incorporates herein all the preceding allegations as though fully set forth herein.

67. Mr. Islam and North South delivered falsified bills of lading, purporting to be original bills of lading covering the Goods, to Citi Freight.

68. In tendering the falsified bills of lading, Mr. Islam and North South represented that the documents were the original, negotiable Bills of Lading covering the Goods.

69. Through delivery of the falsified bills of lading, Mr. Islam and North South intended to deceive and defraud Plaintiff of the Goods, without paying for those Goods.

70. Plaintiff was justified in believing that Mr. Islam and North South, together with Citi Freight, would abide by their respective contracts for the Goods, as well as the norms of international commerce.

71. As a result of Mr. Islam and North South's fraud, Plaintiff was deprived of the Goods and suffered damages to in an amount not less than $367,046.40.

72. As a result of Mr. Islam and North South's fraud, Plaintiff is further entitled to punitive damages.

## V. JURY DEMAND

73. Plaintiff demands a jury trial on all issues that may be tried before a jury in this matter.

## VI. PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants and DOES 1-15 as follows:

As to the First Cause of Action:

a. For an award of damages against Defendant North South in an amount to be proven at trial but not less than $367,046.40;

As to the Second Cause of Action (in the alternative to the First):

b. For an award of damages against Defendant North South in an amount to be proven at trial but not less than $367,046.40;

As to the Third Cause of Action:

c. For an award of damages against Defendant Citi Freight in an amount to be proven at trial but not less than $367,046.40;

As to the Fourth Cause of Action:

d. For an award of damages against Defendant Citi Freight in an amount to be proven at trial but not less than $367,046.40;

As to the Fifth Cause of Action:

e. For an award of damages, joint and severally against Defendants North South, Mr. Islam and Citi Freight in an amount to be proven at trial but not less than $367,046.40;

f. For an additional award of punitive damages against Defendants North South, Mr. Islam and Citi Freight;

As to the Sixth Cause of Action:

g. For an award of damages, joint and severally against Defendants North South and Mr. Islam in an amount to be proven at trial but not less than $367,046.40;

h. For an additional award of punitive damages against Defendants North South, Mr. Islam.

And, against all Defendants:

i. For any and all prejudgment interest; and

j. For such other and further relief as the Court may deem just, equitable or proper.

DATED this 12th day of September 2022

Respectfully submitted,

/s/ Zachary E. Mazur
SARACHEK LAW FIRM
Zachary E. Mazur, Esq.
NY Bar No. 5706726
zachary@saracheklawfirm.com (646) 519-4396
Joseph E. Sarachek, Esq.
NY Bar No. 2163228
joe@saracheklawfirm.com, (646) 517-5420
600 White Plains Road, Suite PH
Scarsdale, New York 10583